UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ISHA M. SALIM**,                                     Case No. 3:15-cv-01407-KI

                        Plaintiff,                    OPINION AND ORDER

        v.

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**,

                        Defendant.

        James S. Coon
        Swanson, Thomas, Coon & Newton
        The Thomas Mann Building
        820 SW 2nd Ave., Ste. 200
        Portland, OR 97204

                Attorney for Plaintiff

        Billy J. Williams
        United States Attorney
        District of Oregon
        Janice E. Hebert
        Assistant United States Attorney

Page 1 - OPINION AND ORDER

1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Isha Salim brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I affirm the decision of the Commissioner.

## BACKGROUND

Salim filed an application for SSI on May 20, 2011.  The application was denied initially

and upon reconsideration.  After a timely request for a hearing, Salim, represented by counsel,

appeared and testified before an Administrative Law Judge ("ALJ") on October 8, 2013.

On December 27, 2013, the ALJ issued a decision finding Salim was not disabled within

the meaning of the Act and therefore not entitled to benefits.  This decision became the final

decision of the Commissioner when the Appeals Council declined to review the decision of the

ALJ on June 18, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

Page 2 - OPINION AND ORDER

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified lumbar strain and vertigo as Salim's severe impairments. These impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Given these impairments, the ALJ found Salim capable of lifting and carrying ten pounds frequently and 20 pounds occasionally, standing and walking six hours in an eight-hour workday, sitting for at least six hours in an eight-hour workday, with the need to alternate sitting and standing every 45 minutes without leaving the workstation. The ALJ thought Salim could occasionally climb ramps/stairs, but not ladders, ropes or scaffolds. She could occasionally stoop, kneel, crouch and crawl, but could not work around hazards such as unprotected heights or dangerous machinery. Given this RFC, the ALJ found Salim could perform her past work as a babysitter. As a result, she was not disabled under the meaning of the Act.

## FACTS

Salim is a refugee from Somalia who witnessed and experienced violence. She lived in a refugee camp in Kenya for more than ten years before coming to the United States in 2004. Beginning in 2005, she lived in Portland, Oregon and provided in-home childcare until 2010. She stopped working due to back pain. Her grade-school aged daughter lived with her.

Salim sought care for her "constant, moderate pain in her low back." Tr. 305. Lumbar spine x-rays in 2010 were normal, reflecting normal alignment, intact vertebrae, and preserved disc spaces. She refused physical therapy initially, but then attended four sessions. She was

encouraged to rest, use ice and heat, stretch and walk, and use an over-the-counter NSAID or

Tylenol.  At her first physical therapy session, she reported low back and hip pain; the therapist

encouraged a home exercise program.  By the fourth session, Salim had made small gains.  Her

low back pain had decreased slightly and she was able to sit, stand and walk for longer.

Tatsuro Ogisu, M.D., examined Salim at the agency's request in December 2010.  Dr.

Ogisu noted mild to moderate kyphosis,[1] with increased lumbar lordosis.[2]  He found her right

shoulder to be lower than her left, and her pelvis to be higher on the right.  She demonstrated full

flexion, 15 degrees extension, and 20 degrees lateral flexion bilaterally.  All motion was

uncomfortable, but only extension was painful.  She could get on and off the table without

difficulty, and could move from sitting to standing and vice versa without difficulty.  She had a

normal gait.  Heel walking required some effort, but was  slow and steady.  Tandem walking was

mildly to moderately unsteady.  A deep knee bend caused some lower back pain.  She exhibited

full range of motion at the hips, knees, and ankles.  Dr. Ogisu thought Salim could sit less than

six hours, and stand and walk for less than six hours.  She could lift and carry up to 15 pounds

occasionally and between five and ten pounds frequently.  She had no restrictions on her

handling abilities.

In March 2011, Salim sought treatment for congestion and low back pain.  July Flynn,

PA-C, examined Salim and found she displayed full range of motion without pain, no tenderness,

---

[1]"Kyphosis is a curving of the spine that causes a bowing or rounding of the back, which leads to a hunchback or slouching posture."  Def.'s Br. at 5, n.1 (citing Medline Plus, U.S. Nat'l Library of Medicine).

[2]"Lordosis refers to the inward curve of the lumbar spine (just above the buttocks).  A small degree of lordosis is normal.  Too much lordotic curving is called swayback (lordosis)." *Id.* at n.2.

no spasm, no curvature, sacroiliac tenderness, normal reflexes, gait, strength, and negative
straight leg raise, and normal muscle strength and reflexes.  Salim agreed to attend physical
therapy.

Dr. Ogisu saw Salim a second time in August 2011.  At that time, Salim reported
aggravated back pain when sitting or lifting, but relief with pain medications, walking, and
massage.  She could walk without difficulty, get on and off the exam table without difficulty, and
move from standing to sitting without difficulty.  Dr. Ogisu noted his inability to examine her
spine because of the shroud which Salim would not lift for religious/cultural reasons.  He noted
increased lumbar lordosis and tenderness at the lower lumbar spine.  Her gait was steady but
sluggish, and a deep knee bend caused lower back pain.  Dr. Ogisu modified Salim's functional
limitations slightly from his last examination, finding Salim capable of sitting up to half the day
and possibly more, and standing and walking less than six hours combined.  He thought she
could lift and carry only ten pounds slightly more than occasionally, and five pounds frequently.

Flynn examined Salim again in June 2012 for "intermittent back pain."  Tr. 653.  Flynn's
inspection of Salim's back was normal, with paraspinal tenderness noted on the left side, as well
as sacroiliac tenderness.  Salim displayed full range of motion without pain, normal reflexes,
gait, strength and negative straight-leg raise, and normal muscle strength and reflexes.  Flynn
urged ice and heat, lifting less than 20 pounds, and limiting bending and twisting until pain had
subsided.  She recommended gentle stretching and strengthening and an NSAID.  Flynn
suggested physical therapy if Salim did not improve.

## DISCUSSION

The only issue Salim raises is the ALJ's rejection of the opinions prepared by Dr. Ogisu.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

The ALJ was required to give specific and legitimate reasons to reject Dr. Ogisu's opinion because it was contradicted by the nonexamining state agency consultants' opinions. *Widmark,* 454 F.3d at 1066-67. The ALJ gave Dr. Ogisu's opinions limited weight because "[t]reatment records after each of his evaluations have shown full motor strength and full range of motion of the back [Tr. 401, 654]. Treatment records are consistent with a capacity for light exertion work with a sit/stand option." Tr. 26. The Commissioner does not defend the second reason.

Salim argues Dr. Ogisu's specialty in physical medicine and rehabilitation, his years of experience as an impartial examining physician, as well as his findings of irregularities in Salim's spine, should outweigh the "perfunctory" findings of a physician's assistant.

Page 8 - OPINION AND ORDER

Upon Salim's complaints of lower back pain, physician's assistant Flynn examined Salim's back which included testing her range of motion, tenderness, leg raises, muscle strength and reflexes. Flynn assessed lumbago, urged Salim to attend physical therapy, take over-the-counter pain medications, and begin strength and stretching exercises. The fact that Dr. Ogisu noted abnormalities in Salim's spine when Flynn did not is irrelevant unless the abnormalities implicate functionality. Here, the ALJ was entitled to rely on Flynn's observations about Salim's functionality and the severity of her impairments. Based on the condition of Salim's back when obtaining treatment for her back pain, the ALJ could rationally conclude the extent of Dr. Ogisu's functional limitations were unwarranted. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (contradictory clinical findings may be specific and legitimate reason). The ALJ's finding is "supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1110.

I do not rely on the additional grounds urged by the Commissioner which the ALJ did not discuss. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation omitted) (the court cannot "affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). In sum, the ALJ provided a specific and legitimate reason to reject Dr. Ogisu's opinions.

Pointing to SSR 06-03p, Salim argues the ALJ was not permitted to weigh Dr. Ogisu's opinion against the single other source of information–Flynn's findings. Instead, the ALJ should have considered the factors laid out in SSR 06-03p. *See* 2006 WL 2329939, at *3 (one factor is whether the opinion is consistent with "the record as a whole"). Importantly, Salim argues, the

ALJ was to have considered whether Dr. Ogisu's opinions were consistent with other evidence in the record, not just with Flynn's findings.  Salim argues the ALJ was not permitted to "pick a winner[.]"  Pl.'s Reply 5.  Here, however, the two notes prepared by Flynn constitute the extent of the examinations of Salim's back condition.  Further, beyond Flynn's examinations, other record evidence supports the ALJ's inference that treatment records indicate more functionality than Dr. Ogisu opined.  Tr. 644 (ibuprofen effective for lumbago); Tr. 639 (ibuprofen effective for pain); Tr. 621 ("It seems the back pain is routine low back pain[.]"); Tr. 609 (recommended abdominal strengthening for tender lumbar spine and pronounced kyphosis).  Indeed, in the context of addressing Salim's lay witnesses, the ALJ noted the minimal and conservative treatment Salim obtained.  The ALJ's determination is supported by substantial evidence in the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ____5th____ day of July, 2016.


  /s/ Garr M. King_____
Garr M. King
United States District Judge